UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DONALD RAY MOBERLY, | |
|---|---|
| Plaintiff, | |
| v. | CAUSE NO.: 3:17-CV-913-JD-MGG |
| WEXFORD MEDICAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Donald Ray Moberly, a prisoner without a lawyer, proceeds on an Eighth Amendment claim of deliberate indifference against Dr. Liaw and Dr. Eichmann for discontinuing his medication in September 2017 at the Westville Correctional Facility. The defendants moved for summary judgment, arguing that they discontinued his medication based on information that Moberly had abused his medication and in accordance with their medical judgment.

The defendants also provided Moberly with the summary judgment notice required by N.D. Ind. L.R. 56-1 and a copy of both Federal Rule of Civil Procedure 56 and Local Rule 56-1. ECF 29. The notice informed Moberly of the consequences of forgoing a response. It advised that, unless he disputed the facts presented by the defendants, the court could accept those facts as true. *See* Fed. R. Civ. P. 56(e). It further advised that a lack of response could result in the dismissal of his case. *See* Fed. R. Civ. P. 56(a). Nevertheless, Moberly did not file a response.

FACTS

Dr. Barbara Eichmann works as a psychiatrist at the Westville Correctional Facility. ECF 30-1. Dr. Andrew Liaw worked as a physician at the Westville Correctional Facility. ECF 30-2. In support of the motion for summary judgment, the defendants submitted affidavits and medical records, which revealed the following. On June 20, 2017, Dr. Eichmann examined Moberly, who was diagnosed with mood disorder and post-traumatic stress disorder. ECF 26-4 at 3. She noted that he was placed in restricted housing due to a positive test for methamphetamine use. *Id.* At Moberly's request, Dr. Eichmann prescribed Effexor, a psychotropic medication, at 75 mg per day but, based on his history of substance abuse, ordered that he receive the medication crushed and floated in a cup of water. *Id.*; ECF 26-1 at 2-3.

On July 12, 2017, Moberly asked to increase his dosage of Effexor, and Dr. Eichmann increased the dosage to 75 mg twice per day. ECF 26-4 at 10-14. On July 13, Dr. Liaw renewed Moberly's order for Neurontin, which was prescribed to alleviate the pain from a chronic back condition. *Id.* at 16. On August 15, Moberly asked to double his dosage of Effexor. *Id.* at 30. On September 5, Dr. Eichmann increased the morning dosage to 150 mg. *Id.* at 35-38.

On September 13, 2017, a correctional officer asked a nurse if Moberly's medication included an orange powder. *Id.* at 40. The nurse confirmed that he was prescribed Effexor, which becomes an orange powder when crushed. *Id.* On September 14, Dr. Eichmann became aware of reports that Moberly had attempted to traffick Effexor. *Id.* at 42-43; ECF 26-1 at 3-4. Dr. Eichmann recalled that Moberly had

specifically requested that he not be prescribed the extended release version of Effexor, which would have been less attractive to a drug-seeking individual. ECF 26-1 at 4. She also considered that she had not observed or seen documentation of significant mental health symptoms since Moberly's placement in restricted housing. *Id.* at 3. As a result, she discontinued the Effexor prescription. *Id.*

On September 22, 2017, Dr. Liaw became aware of the reports that Moberly was trafficking Effexor and was concerned that he might also traffick Neurontin, which is among the most commonly trafficked drugs in the correctional system. ECF 26-2 at 2. Additionally, Moberly's lab work revealed inconsistent levels of Neurontin, which suggested that he was not taking Neurontin as prescribed. *Id.* As a result, Dr. Liaw discontinued the Neurontin prescription. ECF 26-4 at 48-49. On September 26, a nurse described Moberly as aggressive and irate due to the discontinuation of his medication and indicated that he yelled, "I didn't hoard them three times. I only did it twice, and the one time was when that guy gave me meth." *Id.* at 51.

On October 13, 2017, Dr. Liaw examined Moberly during a chronic care appointment. Moberly complained of back pain and asked for Neurontin, but Dr. Liaw declined based on his previous concerns. *Id.* at 56-59. Dr. Liaw noted that Moberly had a potentially legitimate source of pain but observed that Moberly was able to walk and get on and off the examination table with no assistance and without difficulty. ECF 26-2 at 3-4. Dr. Liaw offered acetaminophen to alleviate pain, but Moberly declined. *Id.* On November 28, Moberly asked for Effexor, but Dr. Eichmann observed no significant mental health symptoms and refused. ECF 26-4 at 71-73. She described him as irate and

3

indicated that she would not see him again if he did not show improvement in his behavior and treatment compliance during psychotherapy sessions. *Id.* On January 16, Moberly refused a chronic care appointment with Dr. Liaw. ECF 26-2 at 4. In May 2018, Moberly transferred to the New Castle Correctional Facility, and his prescriptions for Neurontin and Effexor remain discontinued. ECF 17, ECF 56-3 at 46.

Though Moberly did not respond to the motion for summary judgment, in his complaint and deposition testimony, he suggests that his record of drug trafficking is misleading and that the defendants should have not relied on it. For example, in his complaint, Moberly alleges that, on September 22, 2017, he was not attempting to traffick drugs. ECF 1 at 2. Instead, he immediately returned an envelope to the correctional officer distributing mail because it was addressed to another inmate and that he had no prior knowledge of its contents. *Id.* He alleges that he pled guilty to disciplinary charges not because he had attempted to traffick Effexor but to avoid a harsher sentence. *Id.* at 3. At his deposition, he testified that he tested positive for methamphetamine because another inmate put it in his food without his knowledge. ECF 56-3 at 15-16. He explained that his lab work reflected fluctuating levels of Neurontin because medical staff did not consistently provide his medication. *Id.* at 23. He also explained that the nurse misheard him when she recorded his statement that he had hoarded his medication twice. *Id.* at 25-26.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4

Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

## ANALYSIS

Moberly alleges that Dr. Eichmann and Dr. Liaw acted with deliberate indifference to his medical needs by discontinuing his medication. The defendants respond that they discontinued his medication based on information that Moberly had abused his medication and in accordance with their medical judgment. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) A medical need is "serious" if it is one that a physician has diagnosed as mandating

5

treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The record unequivocally reflects that Dr. Eichmann and Dr. Liaw discontinued Moberly's prescriptions for Effexor and Neurontin in accordance with their medical judgment. Significantly, the record contains ample evidence that Moberly had substance abuse issues and had trafficked his medication, including the orange powder in an envelope, the request for a specific type of Effexor, the positive test for methamphetamine, the lab work showing inconsistent levels of Neurontin, the admissions to medical staff, and the disciplinary findings. The record also includes Moberly's explanations for the incidents, but there is no indication that the defendants were aware of these explanations or that they acted unreasonably by instead relying on

7

lab work, reports from staff, Moberly's admissions, and their medical judgment to reach a different conclusion.

The defendants also considered the consequences of the discontinuation, noting the absence of significant mental health symptoms and observing Moberly's ability to move without difficulty. Notably, Dr. Eichmann had already attempted to dissuade Moberly from trafficking through lesser means by ordering the nursing staff to crush and float his Effexor. The defendants each had a follow up examination with Moberly after the discontinuation, and mental health services, including therapy sessions, remained available to Moberly. Additionally, Dr. Liaw offered Moberly acetaminophen for pain and attempted to see him during chronic care appointment in January 2018, but Moberly refused these efforts. Further, Moberly's prescriptions for Effexor and Neurontin remain discontinued even after his transfer to the New Castle Correctional Facility where he was placed under the care of other medical staff. In sum, the record does not indicate that the defendants acted with deliberate indifference but instead acted in accordance with their medical judgment. Therefore, the defendants are entitled to summary judgment.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 24); and

(2) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED on October 22, 2018

                                                  /s/ JON E. DEGUILIO
                                                  JUDGE
                                                  UNITED STATES DISTRICT COURT